In re BIRCO MINING COMPANY, INC., Debtor.

UNITED STATES of America, Appellant,

v.

BIRCO MINING COMPANY, INC., et al., Appellees.

No. CV 81–P–0697–S.

United States District Court, N. D. Alabama, S. D.

July 9, 1981.

Karl L. Kellar, Atty., Tax Div., Washington, D. C., for appellant U.S.A.

M. Charles Sterne, Birmingham, Ala., Trustee.

Jesse W. Shotts, Birmingham, Ala., for debtor and trustee.

A. J. Beck, Silberman, Silberman & Loeb, Birmingham, Ala., for Commercial Testing & Engineering Co.

B. Jack Rivers, Birmingham, Ala., U. S. Trustee.

## MEMORANDUM OF OPINION

POINTER, District Judge.

This appeal involves a challenge by the United States to orders of the Bankruptcy Court which required payment to the Trustee of $7,500 recovered in the name of Birco in an action in the state court and, after hearing on an adversary petition, directed that the $3,250 of the recovery be paid to the attorney who had handled that proceeding on behalf of Birco, with the balance being retained in the Bankruptcy Court pending further orders. The decision is affirmed in part and reversed in part.

The critical facts are without dispute. During the period from December 19, 1977, to July 29, 1978, agents of the Internal Revenue Service duly filed Notices of Federal Tax Liens with respect to taxes owed by Birco Mining Company, Inc. On July 28, 1978, and August 1, 1978, the IRS served Notices of Levy on Jesse W. Shotts, an attorney representing Birco in an action brought by it in state court against Alabama Coal Resources, Ltd., for breach of contract, as well as upon the counsel representing the defendants in that action. On October 26, 1979, Birco obtained a judgment against Alabama Coal in the amount of $7,500, an amount that was subject to payment from funds earlier interpled into the state court by another party to the litigation. On November 16, 1979, prior to any payment of the judgment it had obtained,

J. R. Brooks, U. S. Atty., George C. Batcheler, Asst. U. S. Atty., Birmingham, Ala.,

Birco filed a voluntary petition in the Bankruptcy Court. On the same date, without any knowledge of the Notice of Levy having been served by the IRS, the Bankruptcy Court ordered the clerk of the state court to pay the $7,500 being held on Birco's judgment into the Bankruptcy Court. By order filed on March 19, 1981, the Bankruptcy Court denied the complaint filed by the United States seeking to vacate the order requiring the $7,500 to be paid to the Trustee and, instead, directed that the Trustee pay from that fund $3,250 to Shotts for services in the state court action. Notice of Appeal was filed by the United States on March 27, 1981.

There is no challenge by the United States to the allowance of a fee to Shotts from the amount recovered in the state court[1]. Nor does the United States question the amount of that allowance. What it does attack is the decision to treat the $7,500 as a part of the property of the estate of the debtor, Birco, which is in part based upon an alleged denigration of the effect of its Notices of Levy.

According to the United States, service of the Notice of Levy upon Birco through service on its attorney effected a transfer to the United States of Birco's rights to potential recovery in the lawsuit. *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *United States v. Pittman*, 449 F.2d 623 (7th Cir. 1971); *United States v. Sullivan*, 333 F.2d 100 (3rd Cir. 1964). The funds being held in the state court on the date the case was commenced in the Bankruptcy Court were not, therefore, the property of the debtor which the Trustee could "use, sell, or lease". Hence, it is argued, the turnover order was improper under 11 U.S.C. § 542. See *In re Avery Health Center*, 8 B.R. 1016 (W.D.N.Y.1981); *In re Bush Gardens, Inc. v. United States*,

10 B.R. 506 (Bkrtcy.N.J.1979). The United States does not deny that Birco, and in turn the Trustee, would have certain potential rights related to the funds appropriated by virtue of the levy;[2] these rights would not, however, justify the turnover order.

■ This court agrees with the ultimate conclusion advanced by the United States; namely, that the turnover order was incorrect in the facts of the case. Service of the notice of levy did effect a transfer to the United States of Birco's chose-in-action, subject only to the special rights which Birco had, as indicated in footnote 2, *supra*. Those special rights passed to the Trustee upon commencement of the case in the Bankruptcy Court as "property of the estate" under 11 U.S.C. § 541. Those rights did not include, however, right to possession of the fund itself—rights which were divided between Shotts by virtue of his attorney's lien and the United States by virtue of its levy.

■ The property which may be ordered to be turned over under 11 U.S.C. § 542 is not in all circumstances limited to the "property of the estate." A turnover order may under the wording of that section extend to property which the trustee may "use, sell, or lease under section 363", and that referenced section permits in certain situations a trustee to sell more than the property of the estate. See 11 U.S.C. § 363(f, g, h). None of those special conditions are shown to exist in the present case. Accordingly, the order requiring the state court to pay to the Trustee the $7,500 was, after discovery of the facts concerning the levy, erroneous; and there was due to be treated as part of the debtor's estate not any part of the $7,500 itself but only those special rights regarding redemption, etc.

■ As a matter arising in connection with the administration of the debtor's es-

---

1. Whether, given the law of Alabama which makes an exception for tax liens, Ala.Code § 34–3–61, recognition of the priority of the attorneys' lien is legally required under 26 U.S.C. § 6323(b)(8) need not be resolved; for the United States has as a matter of policy agreed here that a lien in favor of Shotts should be allowed.

2. *E. g.*, a right to redeem; a right to sue for refund; a right to surplus proceeds.

tate and affecting rights of creditors of the estate, the Bankruptcy Court did have, however, the authority to determine the existence, amount, and priority of the attorney's fee lien. The determination that Shotts is to be paid $3,250 is, as indicated, not challenged except on procedural grounds and is due to be affirmed. The balance of the funds recovered from the state court is due to be paid to the United States and not held as part of the estate of the debtor. This latter order is, of course, without prejudice to the special rights, previously indicated, which the Trustee may have.

By separate order, the decision of the Bankruptcy Court will be affirmed in part, and reversed in part for further proceedings in accordance with this opinion.