In re E. C. BISHOP & SON, INC., Debtor.

E. C. BISHOP & SON, INC., Plaintiff,

v.

I.R.S., Department of the Treasury, United States Government, Defendant.

Bankruptcy No. 81–0743–CV–W–5.

United States District Court, W. D. Missouri, W. D.

Jan. 18, 1982.

Fred Bellemere, III, Kansas City, Mo., for plaintiff.

James T. Million, District Counsel, IRS, Kansas City, Mo., H. Glassman, Chief Sp. Procedures Staff, IRS, Dept. of the Treasury, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

This action constitutes an appeal from the July 27, 1981 order of the Honorable Frank P. Barker, the Chief Bankruptcy Judge of the Western District of Missouri, which summarily held that real estate seized by the Internal Revenue Service ("I.R.S.") for unpaid taxes prior to the filing of a petition of bankruptcy by the respondent was property of the bankruptcy estate. The Bankruptcy Court had initially held that the real estate did not belong to the bankruptcy estate and could be sold by the I.R.S. for satisfaction of unpaid taxes. On the debtor's motion for reconsideration, the Court reversed itself. The Government asserts that the Court reached the proper result in its initial determination and asks this Court to reverse the Bankruptcy Court's reconsidered determination. For the following reasons, this Court reverses the judgment of the Bankruptcy Court and enters a judgment in favor of the I.R.S.

### I. *Statement of the Case*

On January 14, 1980, the I.R.S. served a levy on an officer of respondent, E. C. Bishop & Son, Inc. ("Company") for liabilities arising from unpaid withholding and Federal Insurance Contribution Act ("FICA") taxes in the third quarter of 1978 and the first three quarters of 1979. Notices of federal tax liens were filed with the recorder of Deeds of Benton County, Missouri on January 14, 1980 and January 15, 1980. On that latter date, an officer of the I.R.S. served a Notice of Seizure of approximately 30 acres of real estate owned by the Company. The amount of past-due taxes indicated on the Notice of Seizure was $79,-415.00. The Company then filed its tax return for the fourth quarter of 1979 on January 31, 1980 without payment of the taxes due. The I.R.S. filed a Notice of Tax Lien with respect to that unpaid tax on February 21, 1980.

The approximately 30 acres of real estate owned by the Company were noticed for sale by public auction. The notice stated that the sale was to be conducted on February 29, 1980. On the day before the sale, the Company filed a petition for bankruptcy. As a consequence, the sale of the real estate was not conducted. The Company continued in possession of the real estate and is apparently using the real estate in the present operation of its business.

The I.R.S. filed an initial Proof of Claim in the amount of $102,623.75 on March 31, 1980. Supplemental Proofs of Claim were filed on June 24, 1980 for $10,084.60 and on March 6, 1981 for $3,000.50. The Company filed on June 6, 1980 an adversary complaint seeking to have the I.R.S. liens and seizure determined to be a voidable preference, and contesting the claim for post-petition penalties. The Bankruptcy Court held that the I.R.S. liens and seizure were not a voidable preference and that post-petition penalties would not be allowed. That Court then granted the Company leave to file a "turnover" complaint on the issue of what property properly belonged to the bankruptcy estate. The Bankruptcy Court initially refused to order the I.R.S. to turnover the real estate to the bankruptcy estate on May 8, 1981, but reversed itself on July 27, 1981. The case is now here on appeal.

### II. *Issue to be Resolved*

The primary question presented to this Court on appeal is whether the real estate seized by the I.R.S. prior to the Company's filing of a bankruptcy petition is property of the bankruptcy estate under Section 541 of the Bankruptcy Code. The I.R.S. argued that under Section 542 only "property of the estate" is to be turned over to the debtor Company and that since the I.R.S. had levied on the approximately 30 acres of real estate prior to the filing of the petition for bankruptcy, the land never became property of the estate. The term "property of the estate" is defined by Section 541, in part, as "all legal and equitable interests of

the debtor in property as of the commencement of the case." Thus, what passed into the bankruptcy estate was every interest held by the Company in the 30 acres of land.

The interests of the Company in the real estate after its seizure on January 15, 1980 can be determined by reference to the Internal Revenue Code ("IRC") and case law. Section 6331(a) of the IRC authorizes the collection of delinquent taxes by levy on all rights to property which belong to the taxpayer. Section 6331(b) authorizes the seizure and sale of the property rights on which the I.R.S. has levied. The I.R.S. seizure, however, did not divest the Company of all its rights in the real estate. For example, under Section 6335(b) the Company has a right to receive notification of the sale of the real estate. Section 6337 grants the Company the right to redeem the real estate either prior to the sale or within 120 days after the sale. · In addition, Section 6342(b) guarantees the Company the right to receive any surplus proceeds resulting from the sale. It is these interests which became the "property of the estate" when the bankruptcy petition was filed. The real estate itself did not become property of the bankruptcy estate. In turning over the real estate to the bankruptcy estate, the Bankruptcy Court failed to distinguish the interests of the Company from the property in which the Company held an interest. Only the former passes into the bankruptcy estate. *See Cross Electric Co., Inc. v. United States*, 664 F.2d 1218, at 1220 (4th Cir., 1981).

An increasing number of jurisdictions have ruled that real estate seized by the I.R.S. prior to the filing of the bankruptcy petition is *not* property of the bankruptcy estate. *Id.; In re Avery Health Center, Inc.*, 8 B.R. 1016, 7 B.C.D. 210 (D.C.W.D.N.Y.1981); *Parker GMC Truck Sales, Inc. v. United States*, 12 B.R. 667, 6 B.C.D. 899 (Bkrtcy.S.D.Ind.1980); *Winfrey Structural Concrete Co. v. IRS*, 5 B.R. 389 (Bkrtcy.D.Colo.1980); *Bush Gardens, Inc. v. United States*, 10 B.R. 506, 5 B.C.D. 1023 (Bkrtcy.D.N.J.1979). Two cases have held to the contrary. *Aurora Cord & Cable Co., Inc.*, 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy.N.D.Ill. 1980); *Troy Industrial Catering Service v. Michigan*, 2 B.R. 521 (Bkrtcy.E.D.Mich. 1980). The Bankruptcy Court had summarily relied on the District Court position in the *Cross Electric* case. That position was similar to the positions taken in the *Aurora Cord* and *Troy* cases. The District Court position in the *Cross Electric* case was recently reversed by the Fourth Circuit Court of Appeals. *Cross Electric, supra*. The Circuit Court followed the majority position. This Court agrees with the position adopted by the Fourth Circuit and therefore holds that · the I.R.S. may now conduct the sale of the approximately 30 acres of real estate since the real estate is not property of the bankruptcy estate.

Accordingly, it is hereby

ORDERED that the judgment of the Bankruptcy Court is reversed. It is further

ORDERED that each party bear its own costs.